**Ricci Charles SIMMONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–01–00294–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 22, 2002.

Stanley G. Schneider, Schneider & McKinney, P.C., Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, for the State.

Panel consists of Justices JENNINGS, RADACK, and SMITH.[1]

**OPINION**

TERRY JENNINGS, Justice.

After a bench trial, the trial court found appellant, Ricci Charles Simmons, guilty of the state jail felony offense of theft and assessed punishment at one year confinement. In twelve points of error, appellant contends the evidence was legally and factually insufficient to support his conviction because the State failed to prove that appellant "appropriated" property of the value of more than $1,500 but less than $20,000, that the value of the property in question was greater than $1,500 but less than $20,000, that the complainant named in the indictment was an owner of the property, that the property in question was "checks" as alleged in the indictment because the property was, in fact, "drafts," that venue was located in Harris County,

1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

and that appellant possessed the requisite intent.

We reverse and acquit.

## Factual Background

Houston Police Sergeant Mike Murnane testified that he was assigned to work with the Federal Bureau of Investigation (FBI) in an undercover sting operation to buy stolen motor vehicles. A warehouse, named "H.T. Exports," was set up to make the undercover buys. During the operation, Murnane was contacted by Larry Davenport, a mechanic, who offered to sell Murnane a Porsche automobile to do "an insurance job." The car was to be reported stolen to collect money on an insurance claim. On March 20, 1998, Davenport brought Murnane the car, using a wrecker to tow it to the warehouse. Murnane saw the car was in poor condition.

Davenport testified that, in January 1998, appellant, who was a repeat customer and friend, brought him the car to repair. Davenport testified that he later took the car to H.T. Exports to "dispose" of it.

Sandra Porter, a claims adjustor for Geico Insurance Company (Geico), testified that, on January 13, 1999, appellant reported to Geico that the Porsche had been stolen, and she spoke with him about his auto-theft claim. Appellant stated he purchased the car for $20,000 and subsequently left it with his mechanic in September of 1998. Appellant told Geico the car was stolen on October 12, 1998 and he had reported it stolen to the police that same month. Appellant also informed Geico that he had learned the car had been recovered and that, when he claimed it, he discovered that several items were missing. Houston Police Sergeant Clayton Stewart later testified that no police report concerning appellant's car was made until January 1999 and that, when making his police report, appellant told the police he had last seen the car on November 15, 1998.

When Geico requested a copy of the police report for the car theft, it received, instead, a police report for the burglary of the car. Geico then asked appellant to complete a theft questionnaire and provide a copy of the bill of sale along with any recent service receipts. Appellant completed the questionnaire and provided Geico with one service receipt showing a stereo installation. Appellant's tax affidavit indicated that he paid only $1,500 to purchase the car.

Mark Stolle, a Geico investigator, testified that he was informed of the undercover operation and monitored Geico's file for law enforcement and the National Insurance Crime Bureau (NICB). Stolle testified about the concerns he had regarding appellant's insurance claim, including the delay between the date the car was allegedly stolen and the date the claim was filed, the condition of the car, and the discrepancies in appellant's statements and report to Geico. Porter authorized the issuance of two claims checks for towing and storage costs, totaling $3,640 and $1,243.84. Stolle testified that, despite his concerns, Geico issued the checks to appellant, at the direction of law enforcement and the NICB, for the purpose of detecting a crime.

Appellant picked up the checks at a Geico claims office in Harris County on May 27, 1999. As appellant was leaving the claims office, Sergeant Stewart arrested him for theft. Stewart testified that, based on appellant's misstatements to the police and to Geico, he arrested appellant and recovered the two checks.

The indictment in this case charged appellant as follows:

[Appellant] ... on or about **MAY 27, 1999** did then and there unlawfully, appropriate, by acquiring and otherwise exercising control over property, namely, TWO CHECKS, owned by SANDY PORTER, hereafter styled the Complainant, of the value of over one thousand five hundred dollars and under twenty thousand dollars, with the intent to deprive the Complainant of the property.

## Legal Sufficiency

■ In his second point of error, which disposes of the appeal, appellant contends the evidence was legally insufficient to support his conviction because the State failed to prove the value of the two checks in question.

■ A legal sufficiency challenge requires us to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App.2000).

## Theft of a Check

A person commits the state jail felony offense of theft if, without the owner's consent, the person unlawfully appropriates property valued at $1,500 or more, but less than $20,000, with the intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2002).

■ The value of the property in question is an essential element of the offense of theft. *Sowders v. State*, 693 S.W.2d 448, 450 (Tex.Crim.App.1985); *Davila v. State*, 956 S.W.2d 587, 589 (Tex. App.-San Antonio 1997, pet. ref'd). The proof of the value of stolen property can be accomplished by various methods. *See*

*Keeton v. State*, 803 S.W.2d 304, 305–06 (Tex.Crim.App.1991). When the property in question is an uncashed check, proof of the value of the check requires showing that the drawer of the check had sufficient funds to cover the check at the time the actor came into possession of the check. *Brown v. State*, 97 Tex.Crim. 452, 262 S.W. 479, 480 (1924); *Davila*, 956 S.W.2d at 589. Evidence that a check would be, upon endorsement and presentation, paid in its face amount, is proof of its value. *Cooper v. State*, 509 S.W.2d 865, 867 (Tex.Crim. App.1974).

The only evidence the State offered in regard to the value of the two checks was through the testimony of Mark Stolle and Sandra Porter. Stolle testified that the checks were issued under the direction of law enforcement and the National Insurance Crime Bureau, had face values of approximately $3,600 and $1,200 respectively, and were authorized by a Geico adjustor. Porter testified that she authorized the issuance of the two checks, as follows:

Q. Okay. And I'm going to show you State's exhibit 1–B, 1–B–1 and 1–B–2. Can you tell me what those are?

A. Those are the copies of our checks that we issued in payment—

Q. Okay.

A. —for the damage and for towing and storage.

Q. You authorized these?

A. Yes.

This was the extent of the testimony elicited by the State regarding the two checks.

Through its cursory presentation, the State failed to present any evidence that there were sufficient funds on hand to cover the checks at the time appellant came into possession of them. *See Davila*, 956 S.W.2d at 589. Nor did the State present any evidence that the checks

would have been paid if presented. *See Cooper*, 509 S.W.2d at 867. Thus, after viewing the evidence in the light most favorable to the verdict, we cannot conclude that any rational trier of fact could have found that the essential element of the value of the checks was proven beyond a reasonable doubt.

We sustain appellant's second point of error. Because this point of error is dispositive of the appeal, we need not address the remaining points of error.

### Conclusion

Because the evidence presented was legally insufficient to establish the essential element of the value of the checks in question, we are compelled to reverse the judgment of the trial court. *See Brown*, 262 S.W. at 480. Accordingly, we render judgment of acquittal.