Opinion issued January 22, 2004





 











In The
Court of Appeals
For The
First District of Texas
 



NO. 01-01-00294-CR
____________
 
RICCI CHARLES SIMMONS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 



On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 856085
 



MEMORANDUM OPINION ON REMAND FROM
THE COURT OF CRIMINAL APPEALS

 After a bench trial, the trial court found appellant, Ricci Charles Simmons, guilty of
the state jail felony offense of theft of property of the value of more than $1,500 but
less than $20,000 and assessed punishment at confinement for one year.
 In this Court’s original opinion, we relied on Brown v. State, 262 S.W. 479 (Tex.
Crim. App. 1924) to support our holding that the evidence presented at trial was
legally insufficient to establish the essential element of the value of the property in
question, namely, two insurance checks, and we reversed appellant’s conviction and
rendered a judgment of acquittal. Simmons v. State, 84 S.W.3d 810, 814 (Tex.
App.—Houston [1st Dist.] 2002) (“Simmons I”), rev’d, 109 S.W.3d 469, 471 (Tex.
Crim. App. 2003). In response to the State’s petition for discretionary review, the
Court of Criminal Appeals held that
[i]n this case, the evidence of: 1) the face value of the two checks; and 2) appellant’s
willingness to exchange his insurance claims totaling more than $4,000 for those two
checks was sufficient to prove theft of property of a value of more than $1,500 and
less than $5,000 [sic] as alleged in the indictment.

Simmons v. State, 109 S.W.3d 469, 478-79 (Tex. Crim. App. 2003) (“Simmons II”).
The Court of Criminal Appeals reversed this Court’s judgment of acquittal and
remanded the case for consideration of appellant’s remaining issues.
 In his remaining 11 issues, appellant contends that the evidence was legally and
factually insufficient to support his conviction because the State failed to prove that
appellant “appropriated” property of the value of more than $1,500 but less than
$20,000, the complainant named in the indictment was an owner of the property, the
property in question consisted of “checks” as alleged in the indictment, the offense
alleged occurred in Harris County, and appellant possessed the requisite intent to
commit theft. Appellant also contends that the evidence was factually insufficient to
prove that the property in question had a value of more than $1,500 but less than
$20,000.
 We affirm.
Factual Background
 Houston Police Sergeant M. Murnane testified that he was assigned to work with the
Federal Bureau of Investigation (FBI) in an undercover sting operation to buy stolen
cars. A phony “chop shop” named “H. T. Exports” was set up in a warehouse to make
the undercover buys. During the sting operation, Murnane was contacted by Larry
Davenport, a mechanic, who offered to sell Murnane a Porsche 928 for $3,000 “to do
an insurance job.” As part of the sale, Davenport told Murnane that he would call
Murnane prior to reporting the car stolen to make sure that Murnane had enough time
to dispose of the car. On March 20, 1998, Davenport brought Murnane the car, using
a wrecker to tow it to the warehouse. Murnane testified that, when he first saw the
car, it was “inoperable” and in “very bad condition.” Houston Police Sergeant C.
Stewart testified that he saw the Porsche at the warehouse on the following day and
that the car “was not in running condition.” Neither officer prepared an inventory of
the contents of the car, nor could either recall whether a stereo was in the car at the
time that Davenport sold it to them. Shortly after the sale, the car was sent to a storage
lot.
 Davenport testified that, at the time of trial, he was serving a 60-year sentence for
felony theft in an unrelated case. He also testified that he had formerly operated a
mechanic shop and that appellant, who was a repeat customer and friend, brought him
the Porsche to repair in January 1998. Davenport explained that he later took the car
to H. T. Exports to “dispose” of it. When questioned by appellant’s counsel
concerning whether he took the car to be disposed of without appellant’s consent,
Davenport testified as follows: “I told him that I would basically try to do something
in regards to the situation; but he was unaware at the time that anything would have
been done to it till after I was arrested, so I don’t know. I never did tell him actually,
‘Hey, I took care of the situation.’” When the State later questioned Davenport
concerning whether appellant had asked Davenport to do anything other than repair
the car, Davenport replied, “I really don’t want to answer that question.”
 Judy Clark, a records custodian for Safeway Storage, testified that, according to their
records, the car was at their storage lot from approximately March 31, 1998 until
January 21, 1999. Clark also testified that her company sent appellant a letter by
certified mail in October 1998, informing him that his car was at the storage lot. A
“green card” showing that the letter was received at appellant’s address on October
29, 1998 and bearing the signature “R. Simmons” was admitted into evidence.
 Sandra Porter, a claims adjuster for GEICO Insurance Company (GEICO), testified
that appellant, who is a retired firefighter, had purchased insurance coverage on the
Porsche from GEICO and that, on January 13, 1999, appellant reported to GEICO that
the Porsche had been stolen on October 12, 1999. Porter handled appellant’s
auto-theft claim. As part of her investigation of appellant’s claim, Porter obtained a
recorded statement from appellant on January 22, 1999. In his recorded statement,
appellant told Porter that he had purchased the car for $20,000 from a private seller
whom he identified as “Benjamin Robinson.” Appellant explained that he had
purchased the car with a down payment of $5,000 and had paid the remainder of the
purchase price within a few months. Appellant also stated that, in September 1998,
he had left the car under the carport at his house for his mechanic, Davenport, to
retrieve to perform some repairs. Appellant told Porter that Davenport had picked up
the car and called him a few days later to explain the repairs needed. After a few
weeks, appellant discovered that the car was missing when he went to check on it at
Davenport’s repair shop. At that time, he learned that Davenport had moved, and he
subsequently learned that Davenport had been incarcerated. Appellant told Porter
that, in December 1998, he received a telephone call from Safeway Storage informing
him that the Porsche had been impounded by the Houston Police Department on
October 19, 1998 and was at Safeway’s storage facility. Appellant reclaimed the car
and discovered that his car stereo, battery, and some firefighting equipment were
missing from the car. He then had the car towed to a repair shop.
 As part of his claim, appellant also completed and signed a notarized GEICO vehicle
theft questionnaire. In his answers to the questionnaire, appellant indicated that he
had purchased the Porsche from a seller identified as “Roger Robinson” for $20,000.
He also submitted to GEICO a copy of a receipt, purportedly from Owens Services,
showing payment of more than $1,200 for the installation of a car stereo in the
Porsche. The receipt was marked “paid” and bore the initials “JBK.” Appellant also
submitted a repair estimate of $3,892 for damage to the vehicle resulting fromthe
theft.
 A copy of the tax collector’s receipt for the title application for the Porsche was
admitted into evidence and indicated that appellant had purchased the car from Roger
Robinson for $1,500. Johnny Kornegger testified that he had formerly owned and
operated a mechanic’s shop named Owens Services and had worked on two of
appellant’s cars. However, Kornegger denied that he had ever performed any work
on appellant’s Porsche or installed a car stereo for appellant. Kornegger testified that
his initials are “GLK.” Sergeant Stewart testified that no police report concerning
appellant’s car was made until January 28, 1999 and that, in making the report,
appellant had informed the police that his car had been burglarized, not stolen, and
that he had last seen the car on November 15, 1998.
 Mark Stolle, a GEICO investigator, testified that, sometime after appellant had
reported the theft to GEICO, law enforcement officers informed Stolle of their
undercover operation. Stolle’s job was to monitor GEICO’s claim file for law
enforcement and for the National Insurance Crime Bureau (NICB). Stolle testified
that his concerns about appellant’s insurance claim included the delay between the
date that the car was reported to have been stolen and the date that the claim was
filed, the condition of the car, and the discrepancies in appellant’s statements and
report to GEICO. Stolle testified that, at the direction of law enforcement and the
NICB, Porter, as the adjustor handling the claim, authorized the issuance of two claim
checks to appellant for theft loss and storage costs. The checks totaled $3,640 and
$1,243.04.
 On May 27, 1999, appellant picked up the checks at a GEICO claims office in Harris
County. As appellant was leaving the office, Sergeant Stewart, who, from a position
in an adjoining room had watched appellant take the checks, then arrested appellant
for theft and recovered the checks. Stewart testified that he arrested appellant based
on appellant’s statements to the police and to GEICO concerning the alleged theft of
appellant’s car.
 Appellant testified that he was a retired Houston Fire Department firefighter, that his
insurance claims were valid, and that he had never asked or consented to have
Davenport arrange to have the car stolen or to make the car “disappear.” Appellant
testified that he had “loaned” $1,500 to a woman named Dorris Benjamin, who was
a friend of his, and that he was given the Porsche and the title to the car as collateral.
Appellant testified that Roger Robinson was Benjamin’s son and that, over time, he
loaned Benjamin approximately $20,000 against the car. Appellant explained that this
informal loan arrangement formed the basis for his estimate of the car’s value in his
discussions with GEICO.
 Appellant testified that he had trusted Davenport as an honest, competent mechanic
and that, because appellant owned other cars, he had, on several occasions, left his
cars with Davenport for extended periods of time while repairs were made to them.
Appellant testified that he first realized that his car was missing when, in October
1998, he received a letter from the storage lot indicating that the car had been
impounded. However, appellant testified that he had not signed the receipt for the
certified letter described by Clark and that the signature of “R. Simmons” that
appeared on the letter’s return receipt was not his handwriting. When appellant
contacted the salvage yard, he was informed that the FBI had placed a “hold” on his
car. A few days later, appellant was informed that the FBI had released the hold on
his car, and he was able to claim it after paying approximately $1,200 in storage fees.
Standard of Review
 All of appellant’s issues challenge the legal and factual sufficiency of the evidence
to support his conviction. A legal sufficiency challenge requires us to determine
whether, after viewing the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).
Although our analysis considers all evidence presented at trial, we may not re-weigh
the evidence and substitute our judgment for that of the fact finder. Id.
 We review the factual sufficiency of the evidence by examining all of the evidence
neutrally and asking whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or whether the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).
 A person commits the state jail felony offense of theft if “he unlawfully appropriates
property with intent to deprive the owner of the property” and the value of the
property stolen is $1,500 or more, but less than $20,000. Tex. Pen. Code Ann.§§
31.03(a), (e)(4) (Vernon Supp. 2004). Appropriation of property is unlawful
if it is done without the owner’s effective consent. Id. § 31.03(b)(1) (Vernon
Supp. 2004). Here, the State alleged that appellant
on or about MAY 27, 1999 did then and there unlawfully, appropriate, by
acquiring and otherwise exercising control over property, namely, TWO
CHECKS, owned by SANDY PORTER, hereafter styled the Complainant, of
the value of over [$1,500] and under [$20,000], with the intent to deprive
the Complainant of the property.

Value of the Property
 In his second and eighth issues, appellant argues that the evidence was
legally and factually insufficient to support his conviction “because the
State failed to prove the value of the instruments” at issue.
 In our previous opinion, we held that the evidence was legally insufficient
to support appellant’s conviction because the State had failed to offer
evidence from which a rational trier of fact could have found that the
element of the value of the checks was proven beyond a reasonable doubt.
We sustained appellant’s second point of error and rendered a judgment
of acquittal. Simmons I, 84 S.W.3d at 814. On the State’s petition for review,
the Court of Criminal Appeals reversed our judgment and held that the
evidence presented was legally sufficient to prove that the checks were
property of the value of more than $1,500 but less than $20,000. Simmons II,
109 S.W.3d at 478-79.
 Under the doctrine known as “law of the case,” an appellate court’s final
resolution of a question of law in a previous appeal of the same case will
govern the disposition of the same issue when raised in a subsequent appeal.
Carroll v. State, 101 S.W.3d 454, 460 n.35 (Tex. Crim. App. 2003); Howlett v.
State, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999). Here, because the Court of
Criminal Appeals has held that the face value of the checks constituted
prima facie evidence of their value and that such evidence, combined with
the evidence that appellant willingly exchanged his insurance claims for
the two checks, was legally sufficient to prove the value of the property
at issue, we need not reconsider appellant’s second issue.
 With respect to the factual sufficiency of the evidence to prove the value
of the property, no evidence was presented at trial to rebut the prima facie
evidence of the value of the checks or the logical inference that
appellant would have been entitled to receive the face value of the
checks had they been presented at his bank. See Simmons II, 109 S.W.3d at
475. Nor was any evidence presented that GEICO was insolvent or did not
have sufficient funds available to cover the checks. Id. Accordingly,
viewing all of the evidence neutrally, we hold that the evidence was
factually sufficient to prove the value of the checks.
 We overrule appellant’s eighth issue.
Appropriation
 In his first and seventh issues, appellant argues that the evidence was
legally and factually insufficient to support his conviction because the
State failed to prove that he “appropriated” property having a value of
more than $1,500 but less than $20,000. Appellant argues that, because he
was arrested before he could “make use of the funds” represented by the
checks or deposit the funds into his own account, “[a]t most, Appellant
appropriated two pieces of paper worth pennies.”
 The value of the property in question is an essential element of the
offense of theft. Sowders v. State, 693 S.W.2d 448, 450 (Tex. Crim. App. 1985);
Davila v. State, 956 S.W.2d 587, 589 (Tex. App.—San Antonio 1997, pet. ref’d).
The proof of the value of stolen property can be accomplished by various
methods. See Keeton v. State, 803 S.W.2d 304, 305-06 (Tex. Crim. App. 1991).
Evidence that a check would, upon endorsement and presentation, be paid
in its face amount is proof of its value. Cooper v. State, 509 S.W.2d 865, 867
(Tex. Crim. App. 1974).
 As the Court of Criminal Appeals noted in its opinion in this case:
Even if there had been evidence that GEICO might have put a stop order on
payment, that evidence would not affect the value of the checks or their
negotiability when appellant accepted the checks in exchange for his
claims. And that was the moment at which the alleged theft occurred.

Simmons II, 109 S.W.3d at 478.
 As we and the Court of Criminal Appeals have held, the evidence was
legally and factually sufficient to support a finding that the checks had
a value of more than $1,500 but less than $20,000. Moreover, as noted by
the Court of Criminal Appeals, the offense occurred when appellant
accepted the two claim checks. A person commits the offense of theft if he
unlawfully appropriates property with intent to deprive the owner of the
property. Tex. Pen. Code Ann. § 31.03(a). The Penal Code defines
“appropriate” as “acquir[ing] or otherwise excercis[ing] control over”
property. Id. § 31.01(4)(B) (Vernon Supp. 2004).
 Here, the evidence established that appellant accepted the two checks at
the GEICO claims office in exchange for his insurance claims. The evidence
also indicated that, at the time that GEICO gave appellant the checks, it
did so solely at the direction of law enforcement and not because it
believed that appellant’s claim was a covered loss under his policy of
insurance. Viewing the evidence in the light most favorable to the verdict,
we hold that the evidence was legally sufficient to support a finding that
appellant appropriated the property at issue.
 Appellant directs us to no contrary evidence, and we find none.
Accordingly, viewing all of the evidence neutrally, we hold that the
evidence was factually sufficient to support a finding that appellant
appropriated the property at issue.
 We overrule appellant’s first and seventh issues.
Ownership
 In his third and ninth issues, appellant argues that the evidence was
legally and factually insufficient to support his conviction because the
State failed to prove that GEICO adjuster Porter was an owner of the
GEICO claim checks at issue. Specifically, appellant argues that the
record contains no evidence that Porter had title to the checks, had
actual possession of them when they were appropriated, or had a greater
right to possession of them than appellant.
 The Penal Code defines an owner of property as a person who “has title to
the property, possession of the property, whether lawful or not, or a
greater right to possession of the property than the actor.” Tex. Pen. Code
Ann. § 1.07(a)(35)(A) (Vernon Supp. 2004). Proof of ownership may be made
by direct or circumstantial evidence, just as with any other issue in a
criminal case. Robertson v. State, 871 S.W.2d 701, 707 (Tex. Crim. App. 1993);
Jordan v. State, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986). An “owner” may
be an individual, such as an employee of a company, who is in care, custody,
or control of the property belonging to the company. Harrell v. State, 852
S.W.2d 521, 523 (Tex. Crim. App. 1993). It is the employment relationship that
determines whether a given individual is an owner within the meaning of
the Penal Code. Cross v. State, 590 S.W.2d 510, 511 (Tex. Crim. App. 1979). A
person acting on behalf of a corporation, who has managerial authority
and responsibility over its goods, is the effective owner. Id.
 Here, Stolle testified that, as the GEICO adjuster handling appellant’s
claim, Porter had the authority to issue the two claim checks to
appellant. Porter also testified that she had the authority to issue the
checks and that she did so. Viewing the evidence in the light most
favorable to the verdict, we hold that the evidence was legally sufficient
to establish that Porter “owned” the property at issue, for purposes of
Penal Code section 1.07(a)(35).
 Appellant points us to no contrary evidence, and we find none.
Accordingly, viewing all of the evidence neutrally, we hold that the
evidence was factually sufficient to establish that Porter “owned” the
property at issue, for purposes of Penal Code section 1.07(a)(35).
 We overrule appellant’s third and ninth issues.
“Checks” v. “Drafts”
 In his fourth and tenth issues, appellant argues that the evidence was
legally and factually insufficient to support his conviction because the
State alleged that appellant appropriated “checks,” when the evidence
instead established that the instruments at issue were, in fact, “drafts.”
Asserting the existence of a variance between the allegations in the
indictment and the evidence presented at trial, appellant argues that, “if
the State proved anything, it proved only that Appellant appropriated
‘drafts.’ Since a draft is not a check, as a matter of law, the evidence is
insufficient to sustain the allegations.”
 A “variance” occurs when there is a discrepancy between the allegations
in the charging instrument and the proof at trial. Gollihar v. State, 46
S.W.3d 243, 247 (Tex. Crim. App. 2001). In such circumstances, “the State has
proven the defendant guilty of a crime, but has proven its commission in a
manner that varies from the allegations in the charging instrument.” Id.
When a defendant raises a challenge to the sufficiency of the evidence
based upon a variance between the indictment and the proof, only a
“material” variance will render the evidence insufficient. Id. at 257. The
Court of Criminal Appeals has adopted the following test for courts to
use in determining the materiality of a variance:
A variance between the wording of an indictment and the evidence
presented at trial is fatal only if “it is material and prejudices [the
defendant’s] substantial rights.” When reviewing such a variance, we must
determine whether the indictment, as written, informed the defendant of
the charge against him sufficiently to allow him to prepare an adequate
defense at trial, and whether prosecution under the deficiently drafted
indictment would subject the defendant to the risk of being prosecuted
later for the same crime.

Id. (citations omitted).
 Here, even assuming the existence of a variance between the allegations
in the indictment and the proof offered at trial, appellant must show that
such a variance was material and prejudiced his substantial rights. See id.
In his briefing to this Court, appellant does not argue that the indictment,
as written, failed to inform him of the charge against him so as to prevent
him from preparing an adequate defense at trial or that his prosecution
under the indictment would subject him to a risk of a second prosecution
for this same offense. To the contrary, appellant’s defense at trial was
that his insurance claim was valid and that he was entitled to the funds
issued to him by GEICO under the terms of his insurance policy. Moreover,
the record does not support a determination that appellant’s prosecution
under the present indictment would subject him to a risk of a second
prosecution for this offense. The specific identification and respective
amounts of the instruments issued to appellant by GEICO were undisputed,
and the question of whether such instruments were properly
characterized as drafts or checks was never raised or contested at trial.
 Accordingly, assuming without deciding the existence of a variance
between the allegation in the indictment that the instruments unlawfully
appropriated by appellant were checks and the proof presented at trial,
we hold that such variance was not material and did not prejudice
appellant’s substantial rights. See id.
 We overrule appellant’s fourth and tenth issues.
Venue
 In his fifth and eleventh issues, appellant argues that the evidence was
legally and factually insufficient to support his conviction because the
State failed to prove that he appropriated the two GEICO claim checks in
Harris County. However, appellant did not contest venue at trial; thus,
we must presume that it was proved in the trial court. See Tex. R. App. P.
44.2(c). Additionally, and contrary to appellant’s assertion, the record
indicates that Sergeant Stewart testified unequivocally that he saw
appellant receive the checks at a GEICO claims office located in Harris
County.
 We overrule appellant’s fifth and eleventh issues.
 
Intent
 In his sixth issue, appellant argues that the evidence was legally
insufficient to support his conviction because the State did not prove that
appellant intended to commit theft. Alternatively, in his twelfth issue,
appellant argues that the evidence was factually insufficient to support
his conviction because the evidence established that he was merely
“uncertain as to specific dates regarding the loss of the vehicle, the loss
of property in the vehicle, and the insurance claim itself” and was “not
intentionally deceptive.” As noted above, a person commits the offense of
theft if he unlawfully appropriates property with the intent to deprive the
owner of the property. Tex. Pen. Code Ann. § 31.03(a).
 With regard to appellant’s legal sufficiency challenge, Davenport
testified that appellant, who was a friend of his, brought the Porsche to
him in January 1999 and that Davenport later took the car to H. T. Exports
to “dispose” of it. When questioned about whether appellant asked him to
do anything other than repair the car, Davenport answered, “I really
don’t want to answer that question.”
 Sergeant Murnane testified that, in March 1998, Davenport sold the
Porsche to Murnane “to do an insurance job.” Davenport also told
Murnane that he would call Murnane before Davenport reported the car
stolen to make sure that Murnane had enough time to dispose of the car.
That same month, the car was sent to the storage lot. The records
custodian for Safeway Storage testified that the car was at the storage
lot from March 1998 until January 21, 1999. She also testified that her
company sent appellant a certified letter in October 1998 informing him
that his car was at the storage lot. A “green card” was returned, showing
that the letter was received at appellant’s address on October 29, 1998
and was signed for by “R. Simmons.”
 GEICO adjuster Porter testified that, on January 13, 1999, appellant
reported that the Porsche had been stolen on October 12, 1999. In his
recorded statement, appellant told Porter that he had purchased the car
for $20,000. Appellant explained that he had purchased the car with a
down payment of $5,000 and had paid the remainder of the purchase price
within a few months. Appellant also stated that, in September 1998, he left
the car at his house for Davenport to pick up to perform some repairs.
Appellant told Porter that Davenport had retrieved the car and called
him a few days later to explain the repairs needed. Appellant also told
Porter that, in December 1998, he received a telephone call from Safeway
Storage informing him that the Porsche had been impounded by the police
in October 1998. Appellant stated that, when he recovered the car, the
stereo, battery, and some firefighting equipment were missing. In his
answers to a GEICO theft questionnaire, appellant indicated that he had
purchased the Porsche for $20,000. He also submitted a copy of a receipt,
purportedly from Owens Services, showing payment of more than $1,200
for the installation of a car stereo in the Porsche. Appellant also
submitted a claim for $3,892 for damages to the vehicle resulting from the
theft.
 A copy of the tax collector’s receipt for the title application for the
Porsche showed that appellant had purchased the car from Roger
Robinson for $1,500. The owner of Owens Services testified that he had
never installed a stereo or performed any work on appellant’s Porsche
and that his initials did not match the initials on the receipt presented by
appellant. Sergeant Stewart testified that, in January 1999, appellant
reported that his car had been burglarized and that he had last seen the
car on November 15, 1998.
 Viewing the evidence in the light most favorable to the verdict, a
rational fact finder could have concluded that appellant intentionally
deceived GEICO concerning whether the Porsche had been stolen and
damaged. Accordingly, we hold that the evidence was legally sufficient
to establish that appellant intended to deprive GEICO of the funds
represented by the two claim checks.
 In regard to appellant’s factual sufficiency challenge, appellant denied
that he had asked Davenport to dispose of the Porsche, and he testified
that he had previously trusted Davenport to repair other cars of his.
Appellant testified that, in providing information to GEICO, he was merely
confused as to the dates that he left the car for Davenport to repair, that
he had last seen the car, and that it was stolen. He also explained that,
over time, he had loaned approximately $20,000 to the person from whom
he had purchased the car and that he had used this informal loan as a
basis for his statements concerning the car’s purchase price. Appellant
denied that he had signed for the certified letter from the storage lot and
testified that he had paid approximately $1,200 in storage fees, which were
covered under his GEICO policy.
 In conducting our factual sufficiency review, we consider that, when
sitting as the sole trier of fact, the trial court is the exclusive judge of
the witnesses’ credibility and the weight given to their testimony. Joseph
v. State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). The resolution of
conflicts in the testimonial evidence is within the sole province of the fact
finder because it turns on an evaluation of credibility and demeanor. Cain
v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). A verdict is not
manifestly unjust merely because the fact finder resolved a conflict in
the evidence in favor of the State. Id. at 410.
 Here, as the sole fact finder, the trial court was entitled to believe or
disbelieve appellant’s explanation of his statements to GEICO concerning
his insurance claim for his car. Viewing all of the evidence neutrally, we
hold that the evidence was factually sufficient to establish that
appellant intended to deceive his insurance carrier concerning his claim.
 We overrule appellant’s sixth and twelfth issues.
Conclusion
 We affirm the judgment of the trial court.
 


Terry Jennings
 Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Do not publish. Tex. R. App. P. 47.2(b).