Verna Jean SOWDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 1041–83.

Court of Criminal Appeals of Texas, En Banc.

July 17, 1985.

Russell D. Hunt, Waco, for appellant.

Thomas B. Sehon, Dist. Atty., Marlin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

This is an appeal from a conviction for theft under V.T.C.A., Penal Code Section 31.03. The jury, after finding appellant guilty, assessed her punishment at two years' confinement in the Texas Department of Corrections and a $1,000.00 fine, both probated. On appeal the appellant raised two grounds of error. First, appellant alleged that the State insufficiently proved that Marilyn Ejem, the Falls County Treasurer, was the owner of the money stolen by the appellant. Secondly, appellant alleged that the State did not provide sufficient evidence to establish the guilt of the appellant.

The 10th Court of Appeals in Waco, in an unpublished opinion, overruled both of appellant's grounds of error, and affirmed the conviction.

We granted appellant's petition for discretionary review to examine the Court of

Appeals' decision that the trial court was correct when it did not grant appellant's motion for a directed verdict based on the State's failure to prove ownership, as alleged in the indictment.

Appellant was employed as the title clerk in the office of the Falls County Tax Assessor-Collector.[1] In March of 1982, an independent auditor, Mr. William Parrish, Sr., audited the Falls County Tax Office. Parrish testified at trial that he discovered a $7,311.06 shortage in the drawer under appellant's control. As a result of this audit the appellant was indicted. Omitting the formal parts, the indictment alleged that on or about March 3, 1982, the appellant did:

"... unlawfully, intentionally and knowingly appropriate property other than real property, from Marilyn Ejem, *County Treasurer* of Falls County, Texas, the owner thereof, who had a greater right of possession of the property than the defendant, and the defendant acquired control over the property, namely: SEVEN THOUSAND THREE HUNDRED ELEVEN and 6/100 DOLLARS ($7,311.06), in United States Currency, *all of the value of two hundred dollars or more but less than ten thousand dollars*, without the effective consent of the said owner in that the defendant received no consent of any kind from the owner or anyone authorized to act for the owner to acquire control over the said property, and the defendant so acquired control over the said property with the intent to deprive the said owner of the said property. ..."

During the trial Mrs. Marilyn Ejem testified that she was the owner of the $7,311.06, as alleged in the indictment. She denied ever giving appellant permission to take any money belonging to Falls County and also testified that she eventually received all money belonging to Falls County and would deposit it in the County Depository.[2]

The State called appellant's co-workers from the Falls County Tax Office to testify at trial. All eight women testified, under oath, that they did not remove any money from the appellant's cash drawer. Of these eight women, defense counsel offered only one, Mary Jo Henderson, as an alternative suspect. The evidence indicated that after Ms. Henderson resigned from the Falls County Tax Office in 1980, the cash shortages in the appellant's cash drawer occurred. The appellant admitted that she was making up for the cash shortages in her drawer every month by writing a personal check to Falls County, and including it with her receipts for that month. However, appellant denied taking the money and suggested that all of her co-workers had access to her cash drawer.

The State called the Vice-President of the appellant's bank to testify concerning the levels of money that were in appellant's bank account during the time of the alleged thefts. The Vice-President testified that during that time, appellant made several large deposits in her bank account. The State called the Falls County Auditor to testify about the appellant's salary at that time. The evidence indicated that appellant's salary (and the $1,000 gift she received) could not account for the large deposits. Prior to her being indicted appellant told Ms. Henderson that the money she used one month to cover a cash shortage in her drawer was only "a drop in the bucket" compared to what she had taken from her cash drawer. In the charge to the jury, the trial court instructed them on circumstantial evidence.

---

1. After a change of venue, appellant was tried in Limestone County.

2. "The County Treasurer, as chief custodian of county finance, shall receive all moneys belonging to the county from whatever source they may be derived; keep and account for the same in a designated depository or depositories; and pay and apply or disburse the same, in such manner as the Commissioners Court may require or direct, not inconsistent with law. Said court may provide funds for adequate personnel and proper media that would enable the treasurer to perform such constituted duties. Upon failure to perform such duties the treasurer shall be guilty of dereliction of duty and subject to prosecution." Art. 1709, V.A.C.S.

We do not agree with appellant's contention that the State was bound to prove that all $7,311.06 belonged to Mrs. Ejem. It was sufficient for the State to prove that only more than $200.00 belonged to Mrs. Ejem.

■ The State must prove at trial that the amount of money stolen satisfies the jurisdictional requirement of the State's pleading. For example, if a defendant is charged with a third-degree felony theft, the State need only prove that the value of the property stolen was over $200.00, and less than $10,000.00.[3] In *Nitcholas v. State*, 524 S.W.2d 689 (Tex.Cr.App.1975), this Court discussed this principle and its origins. In *Houston v. State*, 98 Tex.Cr.R. 280, 265 S.W. 585 (1924), this Court ruled that an "allegation as to value is not held descriptive further than as it affects the question as to whether the offense be a felony or misdemeanor." Later, in *Turner v. State*, 486 S.W.2d 797 (Tex.Cr.App.1972), this Court concluded that "while the proof left something to be desired, the evidence was sufficient to sustain the allegation that the property taken was of the value of over $50.00." In *Nitcholas*, supra, this Court found that "there was sufficient proof that the air conditioner unit was of the value of more than $200.00 and less than $10,-000.00."[4]

In a case where the State pleads a specific value of the property allegedly stolen, the State need only prove that the value of the property was sufficient to satisfy the range of value that was pled. In *Bergman v. State*, 370 S.W.2d 895 (Tex.Cr.App.1963), the State pled that the value of the money stolen was $52.96. However, the proof at trial was that only $50.00 was stolen. This Court decided that this variance "was immaterial. Proof of value of $50.00 or more is sufficient." In *Wiley v. State*, 632 S.W.2d 746 (Tex.Cr.App.1982), the State alleged that several firearms, of the value of over $200.00, were stolen by the defendant. The State did not prove that all of the firearms, which were alleged in the indictment, were stolen. But the State showed that the value of the firearms, which the State proved were stolen, was over $200.00. This Court held that:

> "The indictment alleges value of over $200.00 and the proof shows the items appropriated to be more than $200.00. Therefore, the evidence is sufficient to support the allegations of the indictment and the verdict."

In the instant case, appellant was charged with the theft of $7,311.06 "of the value of two hundred dollars or more but less than ten thousand dollars" from Mrs. Ejem, the Falls County Treasurer. In effect, the State was pleading that the $7,311.06 belonged to Falls County, as represented by a natural person, Mrs. Ejem. At least $200.00 of this amount belonged to Falls County.[5] At trial, Mrs. Ejem testified

---

3. This was the range of value for a third degree felony theft when the instant case was tried. V.T.C.A., Penal Code Sec. 31.03 was amended (the effective date of the amendment was September 1, 1983), to change the range of value for a third degree felony theft to over $750.00 and less than $20,000.00.

4. The State, in a theft prosecution, only needs to allege that the value of the property is within the range necessary for the jurisdictional pleading. The State does not need to allege the specific value of the property that was stolen.

5. This is revealed by using the applicable allocation formulas set by the relevant statutes (V.T.C.A., Tax Code Sec. 152.121; Articles 6675a–10 and 6687–1, V.A.C.S.) and by making all assumptions in favor of the appellant.

A breakdown of paid receipts in appellant's drawer when audit was performed is as follows:

February 22, 1982—March 1, 1982:

| | | |
|---|---|---|
| Title Applications (Auto sales tax) | $7,321.95 | |
| Vehicle Registration Fees | 2,343.57 | |
| Transfer Registration Fees | 16.50 | |
| Delinquent Transfer Fees | 30.00 | |
| Titles | 237.00 | |
| Duplicate License Receipts | 14.00 | $9,963.02 |

The receipts present in appellant's drawer, at the time of the 1982 audit, indicate that there should have been cash, or checks, in the drawer totaling $9,963.02. Instead, there was only $3,068.82 in the drawer. This left a shortage of $6,894.20. An additional receipt was found which indicated that another $379.00 was unaccounted for, as was $37.86 in cash which had been left in the drawer on February 27, 1982. The state added this amount to the missing $6,894.20 which was verified by the receipts mentioned above to arrive at a total of $7311.06

that, as the County Treasurer, she would "receive all money belonging to Falls County." Mrs. Ejem stated that this money came to her each month from each of the county government offices which collected county revenue, including the Falls County Tax Office. She would then deposit it in the County Depository. Article 1709, V.A.C.S., grants to the County Treasurer authority over county funds.

■ Appellant also asserts that the State must prove that Mrs. Ejem was the exclusive owner of the county revenue that was stolen. We disagree. It was sufficient for the State to prove that Mrs. Ejem was a special owner. In the instant case, the State needed to prove that Mrs. Ejem had a greater right to possession of the Falls County revenue than the appellant.

■ When an entity, such as a county government or a corporation, is the owner of property which has been stolen, it is proper to allege a natural person, who acts for the county or the corporation, is the owner of the property. *Compton v. State,* 607 S.W.2d 246 (Tex.Cr.App.1980); *cert.denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981); *Simpson v. State,* 648 S.W.2d 1 (Tex.Cr.App.1983). The natural person, alleged to be the owner, does not have to be an exclusive owner. "Possession may be proved by showing that the alleged owner controlled the property." *Turner v. State,* 636 S.W.2d 189 (Tex.Cr.App.1982). Not only did Mrs. Ejem have a statutory grant of control over Falls County funds, but testimony revealed that all of the money collected for the county by appellant and the other clerks in the Tax

Office was eventually turned over to Mrs. Ejem. The State proved that Mrs. Ejem had a right of possession of the county funds superior to the right of appellant.

Appellant also argues that the State failed to prove that possession, or ownership, of the Falls County revenue had actually passed to Mrs. Ejem. Appellant believes that so long as the money was stolen from the Tax Assessor-Collector's Office, before it reached Mrs. Ejem or the County Depository, Mrs. Ejem could not have owned or possessed the money. We disagree. The case of *Sharpe v. State,* 648 S.W.2d 705 (Tex.Cr.App.1983) supports this conclusion. In *Sharpe,* supra, the defendant allegedly stole $110.00 from a store owner, Troy Davis. Mr. Arnett Lee went to Davis' store to cash his paycheck and purchase some scotch and beer. Lee endorsed his check and gave it to Davis. Davis laid the check on the register, counted out $152.00 and placed that money on the counter. Before Lee could pick it up, the defendant, Sharpe, grabbed $110.00 of it and fled. The State alleged Davis was the owner. This Court held that, because the transaction had not been completed (Lee had not made his purchase yet), Davis was the owner. But, this Court stated that if Lee had been alleged to be the owner, the proof at trial would also have supported that allegation. Though ownership had not yet passed to him, Lee's right to the $110.00 was superior to that of appellant. *Sharpe,* supra, at p. 707.

■ In the instant case the Falls County revenue passed into the possession of the county when it was turned over to appel-

---

in missing funds. This total is the amount the appellant is alleged to have taken.

Since it is impossible to accurately and fairly determine which governmental entity would ultimately receive these funds, we will assume arguendo these funds were destined for someone other than the County Treasurer.

Article 6675a–10, supra, allows the local county to keep the first $175,000 in vehicle registration fees for its County Road and Bridge Fund, with the surplus going to the State. The receipts indicated there should have been $2,343.57 in vehicle registration fees in the appellant's drawer. Assuming that Falls County had its share of

the vehicle registration fees, we shall credit all $2,343.57 as belonging to the State. This leaves a shortage of $4,550.63. Art. 6687–1, supra, sets the guidelines for distribution of transfer and registration fees, title fees and duplicate license fees. There should have been $297.50 in Article 6687–1 fees in the drawer. Crediting them to the State leaves a total shortage of $4,253.13. Section 152.121 of the Tax Code mandates that 5% of these remaining funds go to the local county. Five percent of $4,253.13 is $212.65, which is the minimum amount that can be credited to the ownership of Falls County.

lant by the county taxpayers. By law, Mrs. Ejem received all county revenue for her to place in the County Depository. Once the revenue was in the county's possession, Mrs. Ejem's right to possess, or control, the revenue was invoked. Within the structure of county government, Mrs. Ejem's right to possess the revenue as County Treasurer was greater than the appellant's right to possess the revenue as a title clerk in the Tax Office.

Even though the State may not have specifically broken down each portion of the fee to be received by Falls County, the record does show that the total monies from the appellant's drawer which belonged to the County was over the value of two hundred dollars and thus Mrs. Ejem was the owner of this amount.

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

Though not precisely developed as a factual matter in the record, it is apparent that a major aspect of appellant's job involved the collection of motor vehicle sales tax (which is to be collected at the time application is made to the county tax assessor-collector for vehicle registration or for a certificate of title, see V.T.C.A. Tax Code, § 152.041(a) and (b)), and various motor vehicle registration fees (see V.A.C.S., Article 6675a–1, et seq.).

In March of 1982 an audit of appellant's "drawer" revealed a shortage of $7,311.06, the amount alleged to have been appropriated from the Falls County Treasurer. This figure constitutes the amount by which the total of the receipts for sales tax and registration fees in appellant's drawer, see V.T.C.A. Tax Code, § 152.064(a)(3), exceeded the cash and checks reflected as payment in those receipts. Appellant testified that she had indeed engaged in a practice of "lapping," i.e., of holding out receipts from week to week to cover up cash shortages in her drawer, but she insisted the shortages themselves were not of her doing. The State produced circumstantial evidence to the effect that appellant *was* responsible for taking the money from her drawer.

In her brief to the court of appeals appellant complained that as a matter of *law* the county treasurer, the alleged owner, could not have had a greater right to possession of *all* of the $7,311.06 taken from her drawer. This is so, she contended, because at the point in time at which the monies and receipts were in her drawer, some proportion of the revenue was earmarked for State rather than county coffers, by statute. See V.T.C.A. Tax Code, § 152.121;[1] V.A.C.S., Article 6675a–10.[2] To these reve-

---

**1.** Sections 152.121(a) and (b) have been amended, see Acts 1983, 68th Leg., p. 456, ch. 93, § 13, effective September 1, 1983; Acts 1983, 68th Leg., p. 1360, ch. 280, § 1, effective September 1, 1983, but as of March 3, 1982, the date alleged in the indictment, they read:

"(a) On the 10th day of each month, the county tax assessor-collector shall send 95 percent of the money collected from taxes imposed by this Chapter [Motor Sales Vehicle Tax] to the Comptroller.

(b) the county tax assessor-collector shall retain 5 percent of the taxes collected under this Chapter as fees of office or to be paid into the officers' salary fund of the county as provided by general law."

**2.** Article 6675a–10 has also been amended since March 3, 1982, see Acts 1981, 67th Leg., p. 473, ch. 203, § 1, effective July 1, 1982; Acts 1983, 68th Leg., p. 2185, ch. 405, § 3, effective Sep-

tember 1, 1983. At the time the offense was committed, however, the provision read, in relevant part:

"On Monday of each week each County Tax Collector shall deposit in the County Depository of his County to the credit of the County Road and Bridge Fund an amount equal to one hundred percent (100%) of net collections [of license fees for motor vehicle registration] during the preceding week until the amount so deposited for the current calendar year shall have reached a total sum of Fifty Thousand and No/100 Dollars ($50,000.).

Thereafter, and until the amount so deposited for the year shall have reached a total of One Hundred and Seventy-Five Thousand Dollars ($175,000.00) he shall deposit to the credit of said Fund on Monday of each week an amount equal to fifty percent (50%) of collections made hereunder during the preceding week.

nues she contended the Falls County Treasurer had no right to possession or claim of ownership whatsoever; therefore the treasurer could not have had a greater right to possession than appellant to the full $7,311.06 allegedly taken.

Concluded appellant:

"The State failed to prove *which portion* of the missing funds would ultimately belong to Falls County, that *any* of the funds would ultimately belong to Falls County and that *at least* $200.00 of the funds would ultimately belong to Falls County. The State's failure to prove the jurisdictional amount is fatal and is grounds for reversal." [Emphasis in original.]

The court of appeals disposed of appellant's contention, summarily, and in my view, erroneously, thus:

"The record reflects that appellant's office fiscally accounted to and channeled funds to the treasurer. See also Tex.Civ.Stat. Art. 1709.

Right to possession means right to actual care, custody, control or management. TPC Sec. 1.07(a)(28); *Compton v. State*, Ct.Crim.Appls, 607 S.W.2d 246, cert. denied [450 U.S. 997] 101 S.Ct. 1701 [68 L.Ed.2d 197]. Proof of right to exclusive ownership is not necessary to establish ownership. *Turner v. State*, Ct. Crim.Appls, 636 S.W.2d 189; *Compton*, supra. The evidence is sufficient to support a finding on ownership."

The abstract principles relied on by the court of appeals simply have no bearing on appellant's contention. Appellant does not argue a failure by the State to prove *exclusive* possession of at least $200.00, the jurisdictional amount. Rather, she asserts that the State's proof failed to establish *any* ownership interest by the county in at least $200.00 of the money missing from her drawer.

The majority disposes of this claim in a footnote. (at 450, n. 5). Using the breakdown of paid receipts contained in the summary of the auditor's report, which was in evidence, the majority applies the statutory schemes, see nn. 1 and 2, *ante*, to conclude that at *least* $212.65 of the monies taken from appellant's drawer belonged to the county. I have no quarrel with the Court's methodology or arithmetic in arriving at this amount. I would merely point out that while the raw data for this ingenious calculation was contained in the record, and before the jury, the statutes were *not.* Simply put, the factfinder was in no position to perform the calculation the Court now finds dispositive.

What *was* before the jury on the question of ownership is the testimony of the alleged owner, Mrs. Ejem, the Falls County Treasurer. The entirety of her testimony relative to her "ownership" of the missing funds was:

"Q: And what is the major function of your office, Mrs. Ejem?

A: I receive all the money *belonging to Falls County* and deposit in the County Depository.

Q: And who all do you receive money from?

A: All the different offices in the County makes a report at the end of each month and turns the money over to me.

Q: And does [appellant's employer,] the Falls County Tax Office also turn its monies over to you that it collects?

A: The Tax Office—each office has an account of their own and they deposit the money in their account and at the end of the month make

---

Thereafter he shall make no further deposits to the credit of said Fund during that calendar year. All collections made during any week under the provisions of this Act in excess of the amounts required to be deposited to the credit of the Road and Bridge Fund of his county shall be remitted by each County Tax Collector on each Monday of the succeeding week to the State Highway Department together with carbon copies of each license receipt issued hereunder during the preceding week."

See also V.A.C.S., Article 6702–1, § 4.202, formerly ARticle 6675a–11, which provides the county tax assessor-collector compensation for services relating to vehicle registration.

the report, write checks back to me to cover those reports.

Q: So you are the one next higher up on the scale, is that right?

A: Yes." [Emphasis supplied.]

Ejem went on to testify that she gave no one permission to take $7,311.06 from Falls County on or about March 3, 1982. On crossexamination the following exchange occurred:

"Q: Okay. Do you of your own personal knowledge know where that $7311.06 came from, for instance, do you know whether the alleged missing money came from a cash drawer or from a bank account, do you know that from your personal knowledge?

A: Only what I would read in the paper or hear, that is all.

Q: So of your own personal knowledge you wouldn't know that?

A: No, sir.

Q: So you don't know what particular group of money we are even talking about, is that a fair statement—

A: Yes, sir.

Q: —of your own personal knowledge?

A: Yes, sir."

That the Falls County Treasurer was "the one next higher up on the scale" in terms of channelling monies "belonging to Falls County" does nothing to establish what proportion of the $7,311.06 taken from the possession of the tax assessor-collector would ultimately go to the county treasurer for deposit in the county depository. It is clear that Ejem did not know where the monies came from, much less by what specific statutory authority the missing amount was collected. In fact she did not testify that *any* of the $7,311.06 belonged to Falls County. Thus, while arguably a competent witness to testify she gave no one permission to take whatever

portion of the missing funds was earmarked for Falls County,[3] Ejem was not asked, nor is it likely she could have supplied, what that portion was.

For these reasons I am compelled to agree with appellant's contention that the State failed in its burden of proving Ejem was the special owner by virtue of her office as county treasurer of at least $200.00 of the money taken from appellant's drawer. I would reverse the judgment of the court of appeals and remand the cause for entry of an order of acquittal.

TEAGUE and MILLER, JJ., join.

---

**3.** Whether her testimony would suffice to establish Ejem, the county treasurer, as a "special owner" of monies located in the county tax assessor-collector's office seems doubtful in light of Judge Teague's opinion in *Dingler v.*

*State,* (Tex.Cr.App., No. 1086–83, delivered September 19, 1984) (Motion for rehearing pending). Appellant does not urge a *Dingler* analysis, however.