Opinion issued June 3, 2010

















     
In The
Court of Appeals
For The
First District of Texas




NO. 01–08–00616–CR




EDWIN ARNOLDO CAMPOS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1126512



 
O P I N I O NAppellant, Edwin Arnoldo Campos, was charged by indictment with the first-degree-felony offense of theft of property valued, in the aggregate, at greater than
$200,000, to which appellant pleaded not guilty. See Tex. Penal Code Ann.
§ 31.03(a), (e)(7) (Vernon Supp. 2009). A jury found appellant guilty and assessed
his punishment at 6 years’ confinement and a $10,000 fine.
          In two points of error, appellant (1) challenges the legal and factual sufficiency
of the evidence and (2) contends that the trial court erred by admitting certain
evidence.
          We affirm.
Background
          According to the record, the 3M company is a $163-billion-dollar-corporation
with 35,000 employees in the United States. The company has a small warehouse
distribution center in Houston which is staffed by one permanent 3M employee and
by four temporary workers provided by a staffing agency, Volt Services. 
          At all times relevant to this case, appellant was an employee of Volt. From
2004 to 2006, Volt assigned appellant to work in the 3M warehouse. Appellant’s
duties included shipping, receiving, and inventorying window-tinting materials.
While working in the 3M warehouse, appellant began operating an automotive
window-tinting service. 
          Rick Knight, a 3M sales representative for the territory in which the Houston
warehouse was located and the sole 3M employee at the Houston warehouse, testified
that he worked with appellant at the warehouse and that appellant had expressed an
interest in learning how to perform automotive window tinting. Knight testified that
he had allowed appellant to practice with some used sample rolls. Eventually,
appellant started a business called “3rd Coast Tinters,” and appellant was allowed to
purchase materials from the warehouse for use in his business. Over time, inventory
shortages began to occur.
          Rhonda Holmes, a Volt employee assigned to work as a customer service
representative at the 3M Houston warehouse, testified that her responsibilities
included performing monthly inventories and comparing actual counts against the
computer. Holmes testified that she began to notice discrepancies. Holmes testified
that she used to see appellant at the warehouse on weekends tinting cars and that “we
all knew” that appellant was allowed to purchase tinting materials.
          Knight notified 3M’s corporate headquarters in St. Paul, Minnesota of the
inventory shortages. Knight testified that 3M representatives came down and
performed an inventory of the Houston warehouse in February 2006. An inventory 
shortage was realized, but it was thought to be the result of computer entry errors. 
After the inventory was reconciled, business continued as usual. In August 2006,
however, another inventory was performed, which again revealed a substantial
shortage—over 400 rolls of automotive tinting materials had disappeared. Knight
explained that one roll of material tints the windows of approximately 10 cars. 
          In October 2006, 3M in St. Paul hired a private investigator, Jimmy Garcia, to
investigate the inventory shortages. Garcia investigated appellant’s tinting business. 
Garcia found 3rd Coast Tinters on the internet, and he called to set up an appointment
to bring in a vehicle for window tinting service. Garcia testified that appellant
answered the telephone and made the appointment. Appellant had Garcia meet him
at the 3M warehouse. He then told Garcia to drive around back and into the
warehouse. Appellant and Garcia agreed on a price of $170. Garcia testified that he
saw appellant remove a box of tinting material from amongst several other boxes in
one of the storage bins in the warehouse. The box was new and had not been opened. 
Appellant said that he was a manager at 3M and that he was granted substantial
liberties. A person named Raul installed the tint. Upon completion of the work,
Garcia paid appellant in cash, and appellant signed a 3M warranty card as a receipt.
Garcia asked appellant to give him the box that the tinting materials had come in so
that he could store some old battery cables. Appellant complied. The box was
admitted into evidence at trial. Garcia reported his experience to Rick Ostrom, a 3M
security director in St. Paul.
          On November 20, 2006, 3M sent Ostrom, accompanied by Kim Volner, an
audit manager based in 3M’s St. Paul offices, to the Houston warehouse to investigate
the shortages. Volner testified at trial that she was responsible for conducting all of
3M’s internal investigations and that 3M had authorized her to speak on behalf of the
corporation in this case.
          Volner and Ostrom interviewed the warehouse personnel, including appellant. 
Volner testified that, after some discussion, appellant admitted to her that he had
taken tinting materials from the warehouse without authorization and that he had sold
the materials for cash. In addition, appellant told Volner that he had brought
customers into the warehouse on weekends and had provided automotive window
tinting in exchange for cash, utilizing materials that he took from the 3M warehouse. 
Volner testified that appellant did not have authorization to use, to remove, or to sell
3M’s non-sample materials. Volner said that appellant was “very apologetic,” that
he “used the word ‘stole’ several times,” and that he promised to “pay us back.” 
          Appellant also gave a written statement to Volner, which was admitted at trial
without objection and states as follows:
I Edwin A. Campos hereby make the following statement to Richard L.
Ostrom, 3M Corpor[ate] Security, and Kim Volner, 3M Corporate
Audit[or.] The following statement is voluntary, no promises or threats
have been made to make this statement.
 
I started 3rd Coast Tinters in 2004 and purchased some film, then I
would take a roll and sell it to people. I would also install it here at the
3M facility. I solely acted alone and had no partners. I would sell the
film for cash and when I installed it here I would pay the tinter cash with
no records. I know this was wrong and am willing to pay the
consequences. I am deeply sorry and are [sic] willing to pay for it even
if it takes me a life long time. I would sell it to Raul and Alfonso. I
would sell it to other dealers and meet people at locations for cash. I
paid bills with the money and took some trips abro[a]d. As an example
I had two people in on Sunday and I had Raul install it this Sunday. I
strongly believe I was breaking the law and are [sic] willing to pay for
my mistakes.
I have read this statement and signed it because it is true and correct. I
have initialed each paragraph and signed the statement.After appellant confessed, Volner performed an inventory of the warehouse that same
day. 

          At trial, Volner testified that normal inventory adjustments for the Houston
warehouse were less than one percent annually. In 2005, however, the warehouse
suffered an inventory loss of 17 percent. In 2006, the losses had risen to 37 percent. 
Appellant ceased working at the warehouse in November 2006. In 2007, the
inventory adjustment was 1.2 percent. An exhibit depicting the annual inventory
losses was admitted at trial without objection.

          State’s Exhibit 11, showing that the total inventory losses suffered as of August
2006 were $680,824.32, was admitted without objection. 

 
          In addition, the State sought to admit Exhibit 12, Volner’s November 20, 2006
inventory showing additional losses of $90,960.99, as a business record. As
discussed in more detail below, appellant objected, contending that the inventory had
been taken just after his confession. Therefore, he contended, it was prepared in
anticipation of litigation and was not subject to the business records exception to the
hearsay rule. Appellant also objected to the admission of Exhibit 12 on the ground
that it violated his Sixth Amendment right to confront the witnesses against him. A
person named “John” was noted on the inventory sheets as having assisted with the
inventory count, but Volner could not identify him. At a hearing outside the presence
of the jury, Volner testified that the inventory was performed to assess the extent of
the losses as of that date and that, although she could not remember “John,” anyone
assisting in the inventory that day would have been a trusted 3M employee. 
Appellant’s objections were overruled, and Exhibit 12 was admitted.

          Bryan Vaclavik, chief fraud examiner at the Harris County District Attorney’s
Office, testified that appellant’s bank records reflect that, during the period from 2004
to 2006, there were regular payroll deposits from Volt Services and there were
unidentified deposits totaling $114,937.38. The list of unidentified deposits was
admitted at trial without objection.

 
Legal and Factual Sufficiency

          In his first point of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction “because the State failed to prove an
essential element of the crime as indicted, that Kim Volner was the owner of the
property.” Appellant combines his legal and factual sufficiency discussions. 
However, we will examine appellant’s claim of legal insufficiency before, and
separately from, his claim of factual insufficiency.




A.      Standards of Review and Applicable Legal Principles

          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007);
Parker v. State, 192 S.W.3d 801, 804 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d). We “may not re-evaluate the weight and credibility of the record evidence and
thereby substitute our judgment for that of the fact-finder.” Williams, 235 S.W.3d at
750. We give deference to the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts. Id. Our duty is to ensure that the evidence presented
actually supports a conclusion that the defendant committed the offense. Id.

          We begin our factual sufficiency review with the assumption that the evidence
is legally sufficient. Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).
Evidence that is legally sufficient, however, can be factually insufficient if (1) the
evidence supporting the conviction is too weak to support the fact finder’s verdict,
or (2) considering conflicting evidence, the fact finder’s verdict is “against the great
weight and preponderance of the evidence.” Id. We consider all of the evidence in a
neutral light, as opposed to in a light most favorable to the verdict. Id. We recognize
that the factfinder is in the best position to evaluate the credibility of witnesses, and
we afford due deference to the factfinder’s determinations. Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). We may only find the evidence factually
insufficient when necessary to “prevent manifest injustice.” Laster, 275 S.W.3d at
518. In such case, we must explain why the evidence is too weak to support the
verdict or why the conflicting evidence greatly weighs against the verdict. Id.

          A person commits theft if he unlawfully appropriates property with intent to
deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a) (Vernon Supp.
2009). “Appropriate” means (A) to bring about a transfer or purported transfer of title
to or other nonpossessory interest in property, whether to the actor or another or (B)
to acquire, or otherwise exercise control over, property other than real property. Id.
§ 31.01(4). Appropriation of property is unlawful if, inter alia, it is without the
owner’s effective consent. Id. § 31.03(b).

          Pursuant to the Penal Code and as applicable herein, a person is an “owner” if
he has title to the property, possession of the property, whether lawful or not, or a
greater right to possession of the property than the actor. Tex. Penal Code Ann.
§ 1.07(a)(35) (Vernon Supp. 2009). 

B.      Analysis

          1.       Legal sufficiency

          Appellant first contends that the evidence of the element of ownership is
legally insufficient because “Kim Volner was not the legal owner of the stolen
property.” Appellant does not challenge the evidence supporting any of the other
elements of the offense.

          It is undisputed that 3M, a corporation, was the actual lawful owner of the
property at issue. The indictment alleged that, from 2004 through 2006, appellant
appropriated window tinting material “owned by Kim Volner.” Because a
corporation cannot itself testify, when allegedly stolen property is owned by a
corporation, it is proper and preferable for the indictment to allege that the property
was taken from the custody and control of a natural person acting for the corporation. 
See Freeman v. State, 707 S.W.2d 597, 605 (Tex. Crim. App. 1986); Castillo v. State,
469 S.W.2d 572, 573 (Tex. Crim. App. 1971); Lewis v. State, 193 S.W.3d 137, 140
(Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that when a corporation owns
property at issue, State may allege ownership in “special owner”); Villani v. State,
116 S.W.3d 297, 306 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d); Chowdhury
v. State, 888 S.W.2d 186, 187 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). 

          Proof of ownership may be shown by circumstantial evidence. Villani, 116
S.W.3d at 306. The term “owner” is to be broadly defined to protect all ownership
interests from criminal conduct. See Freeman, 707 S.W.2d at 603. Under the Penal
Code, an “owner” includes one with (1) title to the property, (2) possession of the
property, whether lawful or not, or (3) a greater right to possession of the property
than the appellant. See Tex. Penal Code Ann. § 1.07(a)(35)(A). “Possession”
means actual care, custody, control, or management. Tex. Penal Code Ann.
§ 1.07(a)(39). When there are competing possessory interests, the accused must have
exercised “unauthorized” control over the property. Freeman, 707 S.W.2d at 605. 

          Here, appellant does not dispute that he took tinting materials from the 3M
warehouse through the course of his employment with Volt, without paying for them
and without authorization, and that he then sold or used the materials to obtain cash
that he kept for himself. As such, appellant exercised unauthorized control over the
materials. See id. at 606. At the moment in time that appellant began taking the
materials, he relinquished whatever possessory interest he had in those materials. See
id. At that moment, “any person who established a possessory interest in the
[materials] had a greater right to possession of the [materials] than did [appellant].” 
See id. at 605.

          The State presented evidence that, at the time appellant unlawfully
appropriated the materials at issue, Volner had a greater right to possession of those
materials than did appellant. See Tex. Penal Code Ann. § 1.07(a)(35)(A); Freeman, 
707 S.W.2d at 603. 

          Volner testified that she has been an employee of 3M for 21 years, that she is
one of four auditing managers at 3M’s corporate headquarters in St. Paul, Minnesota,
and that she is legally authorized to act for 3M. In addition, the record shows that
Volner is a shareholder in 3M. 

          “Proof of a management position alone is insufficient to sustain the ownership
allegation absent some showing that the named owner had exercised some degree of
care, custody, control, or management over the property allegedly stolen.” Freeman,
707 S.W.2d at 603 (emphasis added). Here, the record further shows that Volner’s
function at 3M was to perform internal auditing and investigations. When Knight
reported the inventory losses at the Houston warehouse, 3M sent Volner to physically
audit the inventory and investigate the losses. Traci Georgiou, a Volt employee
assigned to work in the office at the 3M Houston location, testified that the tinting
material at the Houston warehouse came from 3M’s facility in St. Paul. From this
evidence, the jury could have reasonably concluded that Volner did more than occupy
a management position in the company; in addition to her status as a shareholder of
3M, she had management responsibilities that physically extended to 3M’s window-tinting inventories at the Houston warehouse. 

          Volner and Knight each testified that appellant was never, at any time during
his misappropriations, an employee of 3M; rather, he was an employee of Volt, a
temporary staffing service. Volner and Knight each testified that appellant was not
authorized to remove, use, or sell the materials at issue. 

          The jury could have reasonably concluded that Volner’s right to possession of
3M’s inventories was greater than that of appellant. See Tex. Penal Code Ann.
§ 1.07(a)(35)(A); see Johnson v. State, 606 S.W.2d 894, 895–96 (Tex. Crim. App.
1980) (holding store employee who was employed to protect property and keep it
from being stolen had greater right to possess); Rabb v. State, 681 S.W.2d 152, 154
(Tex. App.—Houston [14th Dist.] 1984, pet. ref’d) (“A person acting on behalf of a
corporation, with managerial authority and responsibility over its goods, is the
effective owner . . . .”) (quoting Cross v. State, 590 S.W.2d 510, 511 (Tex. Crim.
App. 1979)).

          Appellant contends that the evidence that Volner is an owner is legally
insufficient because, during his course of thefts, Volner was not physically present
at the warehouse and therefore could not have taken possession of, or have exercised
physical control over, the materials at issue. In addition, appellant points out that
Volner testified that she believed that she did not own or have physical control over
the materials at issue at the time of the thefts. 

          That Volner was not physically present in the Houston warehouse, during the
time of appellant’s misappropriations, to physically exercise her right to possession
of the materials at issue does not render the evidence legally insufficient. An owner
need not be an exclusive owner or in actual possession of the property. Sowders v.
State, 693 S.W.2d 448, 451 (Tex. Crim. App. 1985). Under the Penal Code, the State
need only show a superior right to possess. See Tex. Penal Code Ann.
§ 1.07(a)(35)(A). 

 
          We must give deference to the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts. See Williams, 235 S.W.3d at 750. The jury was free to
accept or reject any portion of the testimony. See Wesbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000). Viewing the evidence in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found beyond a reasonable
doubt that Volner was an owner, as defined in the Penal Code, of the materials at
issue, during the time of appellant’s commission of the offense, because Volner’s
right to possession of the materials was superior to that of appellant. See Tex. Penal
Code Ann. §§ 1.07(a)(35)(A), 31.03. We hold that the evidence is legally sufficient
to support the jury’s verdict. See Williams, 235 S.W.3d at 750.

          2.       Factual sufficiency

          Appellant next contends that the evidence that Volner was the owner is
factually insufficient. Appellant does not raise any new arguments or challenge the
evidence supporting any of the other elements of the offense.

          As discussed in the legal sufficiency analysis, the State was required to show
that Volner was the owner of the window-tinting materials at the time of appellant’s
misappropriations. See Tex. Pen. Code Ann. § 31.03; Castillo, 469 S.W.2d at 573. 

 
          The State presented evidence that Volner is a 3M shareholder; that she has
been a 3M employee for 21 years; that she is an auditing manager; that she is an
authorized agent for 3M; and that her function at 3M is to perform internal auditing
and investigations. The record shows that when Knight reported the inventory losses
at the Houston warehouse, 3M sent Volner to physically audit the inventory and
investigate the losses. From this evidence, the jury could have reasonably concluded
that Volner had physical management responsibilities over 3M’s window-tinting
inventories at the Houston warehouse. See Freeman, 707 S.W.2d at 603.

          Conversely, the record shows that appellant was never, at any time during his
appropriation of the materials at issue, an employee of 3M; rather, he was an
employee of a temporary staffing service. Further, the record shows that appellant
acted without authorization when he removed, used, and sold the materials at issue. 
The evidence supports that Volner’s right to possession of 3M’s inventories was
greater than that of appellant. See Tex. Penal Code Ann. § 1.07(a)(35)(A). Hence,
the jury could have reasonably concluded that Volner was the owner of the materials
as alleged in the indictment.

          As appellant contends, the record shows that, during the time that appellant was
taking the window tinting materials, Volner was working at the 3M corporate offices
in St. Paul, Minnesota, and that she was not physically working in the Houston
warehouse. Further, Volner testified that she believed that she did not own, have
possession of, or have control over the materials until such time as, in November
2006, 3M sent her to Houston to audit the inventory and investigate the losses. 

          These facts do not render the evidence factually insufficient. An owner need
not be an exclusive owner or in actual possession of the property. Sowders, 693
S.W.2d at 451. Further, at the moment in time that appellant began taking the
materials, he relinquished whatever possessory interest he had in those materials. See
Freeman, 707 S.W.2d at 603.

          We must give deference to the responsibility of the factfinder to fairly weigh
evidence and to draw reasonable inferences from the facts. See Marshall, 210 S.W.3d
at 625. We conclude that a rational jury could have concluded that Volner’s right to
possession was superior to appellant’s right to possession. 

          Considering all of the evidence in a neutral light, we cannot conclude that the
evidence supporting the conviction is too weak to support the fact finder’s verdict or
that the verdict is against the great weight and preponderance of the evidence. See 
Laster, 275 S.W.3d at 518. We hold that the evidence is factually sufficient to
support the jury’s verdict.

          Accordingly, we overrule appellant’s first point of error.

 
November Inventory

           In his second point of error, appellant contends that the trial court abused its
discretion by “admitting records of the November 2006 inventory” as a business
record. Appellant also contends that the trial court’s admission of the inventory
violated his Sixth Amendment right to confront witnesses.

          A trial court’s ruling on the admissibility of evidence is reviewed for an abuse
of discretion. See Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). An
abuse of discretion occurs when the trial court acts without reference to guiding rules
or principles or acts arbitrarily or unreasonably. Galliford v. State, 101 S.W.3d 600,
604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). We will affirm the trial court’s
ruling if it lies within the zone of reasonable disagreement. See Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002). 

          1.       Business Records

          Texas Rule of Criminal Evidence 803(6), the business records exception to the
hearsay rule, permits a party to introduce

[a] memorandum, report, record, or data compilation, in any form, of
acts, events, conditions, opinions, or diagnoses, made at or near the time
by, or from information transmitted by, a person with knowledge, if kept
in the course of a regularly conducted business activity, and if it was the
regular practice of that business activity to make the memorandum,
report, record, or data compilation, all as shown by the testimony of the
custodian or other qualified witness, . . . unless the source of
information or the method or circumstances of preparation indicate lack
of trustworthiness. 

 
Tex. R. Evid. 803(6) (emphasis added). “Rule 803(6) does not require that the
person authenticating the record be either the creator of the record or to have personal
knowledge of the information recorded therein.” Canseco v. State, 199 S.W.3d 437,
440 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). Rather, the testifying witness
need only have knowledge of how the record was prepared. Id. 

          Records prepared in anticipation of litigation are excluded under the
trustworthiness criterion of Rule 803(6), as emphasized above. Sessums v. State, 129
S.W.3d 242, 249 (Tex. App.—Texarkana 2004, pet. ref’d); see Palmer v. Hoffman,
318 U.S. 109, 110–15, 63 S. Ct. 477, 479–81 (1943) (holding that statements
obtained in anticipation of litigation are not business records).

          Here, the court conducted a hearing outside the presence of the jury to
determine the admissibility of State’s Exhibit 12. Exhibit 12 is a record of the
warehouse inventory that was conducted by Volner on November 20, 2006. The
exhibit shows the number of units of each type of material that the computer reflected
should be in stock, the physical count of each type of material actually in the
warehouse, the number of units missing, and the total value of the missing units. 

 
          Volner testified that the inventory records were kept in the ordinary course of
business, that it was the regular practice of 3M to keep inventory records, and that the
records were made by persons with knowledge of the events, at or near the time of the
events. Hence, the State appears to have laid the proper predicate for admission of
the inventory as a business record under Rule 803(6). See Tex. R. Evid. 803(6).

          Appellant contends, however, that Exhibit 12 does not fall within the business
records exception because it was created in anticipation of litigation—appellant
having just, earlier the same day, confessed that he had been stealing materials from
the warehouse. Volner testified that, when she went to the Houston warehouse on
November 20, 2006, she did not know the source of the inventory discrepancies. She
said that it was only after appellant confessed that morning that she knew she was
dealing with theft. Volner testified that her count of the inventory depicted in Exhibit
12 was not done to substantiate appellant’s theft or in preparation for litigation. 

          Volner also testified, however, that her inventory was performed after she
received appellant’s confession and with knowledge that there was a potential for
civil and criminal liability. Specifically, Volner testified that the inventory was
performed to “understand the full scope of our losses in order to understand what our
recoveries would be.” Hence, Volner’s testimony shows that Exhibit 12, which
depicts the items missing from the warehouse and the value of those items, was
created for purposes of recovery, with knowledge that theft had taken place in the
warehouse. See Dixon v. State, 940 S.W.2d 192, 195 (Tex. App.—San Antonio 1996,
no pet.) (holding that list of missing items was not business record for purposes of the
hearsay rule). 

          Further, the record shows that 3M hired Garcia to “investigate” appellant in
October 2006; that Garcia contacted appellant on November 2, 2006; that Garcia
brought a vehicle to appellant for tinting service on November 11, 2006; and that
Garcia reported appellant’s conduct to Ostrom. Hence, when Ostrom and Volner
went to the Houston warehouse on November 20, 2006 and conducted the inventory
that comprises Exhibit 12, appellant had already been under investigation by 3M. 

          Because the “circumstances of preparation” of Exhibit 12 “indicate [a] lack of
trustworthiness,” we conclude that Exhibit 12 does not comport with Rule 803(6).
See Tex. R. Evid. 803(6); Dixon, 940 S.W.2d at 195. Thus, the trial court abused its
discretion by admitting Exhibit 12 as a business record. 

          The erroneous admission of a hearsay statement constitutes non-constitutional
error that is subject to a harm analysis. See Tex. R. App. P. 44.2(b); Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Non-constitutional error must be
disregarded unless it affected a substantial right of the defendant. Tex. R. App. P.
44.2(b); Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). A substantial right
is affected when the error had a substantial and injurious effect in determining the
verdict. Johnson, 43 S.W.3d at 4. A conviction should not be overturned for such
error if this court, after examining the record as a whole, has fair assurance that the
error did not influence the trial court or had but a slight effect. See id.

          Having examined the record as a whole, the State’s case against appellant was
strong. Appellant does not contend on appeal that this alleged error contributed to
his conviction. Rather, he contends that it contributed to his punishment, as follows: 
“It is entirely likely that the jury assessed punishment based on the dollar amount they
believed stolen, particularly in light of the fact that they assessed a large fine.”

          The record shows that appellant was indicted for theft of property valued, in
the aggregate, at over $200,000, which is a first-degree felony. See Tex. Penal Code
Ann. § 31.03(a), (e)(7) (Vernon Supp. 2009). The range of punishment for a first-degree felony offense is confinement for 5 to 99 years, or life, and a fine not to
exceed $10,000. See Tex. Penal Code Ann. § 12.32 (Vernon Supp. 2009).

          Here, Volner testified that the total inventory losses suffered through August
2006, as reflected in Exhibit 11, were $680,824.32. Exhibit 11 was admitted without
objection. Hence, the State showed that well over the aggregate value allegation was
substantiated. See Lehman v. State, 792 S.W.2d 82, 85 (Tex. Crim. App. 1990). The
jury assessed punishment at 6 years’ confinement—one year over the statutory
minimum. The jury also assessed a fine of $10,000, which is the statutory maximum. 
However, it is well below, and well supported by, the State’s proof that appellant
committed theft of property valued at $680,824.32. Given the level of theft that was
proven without objection, we have fair assurances that the additional $90,960.99
appellant challenges either did not influence the jury or have more than a slight affect. 
See Johnson, 43 S.W.3d at 4.

          Because, after examining the record as a whole, we cannot conclude that a
substantial right was affected, the error must be disregarded. See Tex. R. App. P.
44.2(b); Johnson, 43 S.W.3d at 4.

          2.       Confrontation Clause

          At trial, Volner testified that she could not remember or identify a person
named “John,” who was noted in defense Exhibits 1 and 8 as having assisted in
counting the inventory on November 20, 2006. Appellant complains that, because
Volner could not identify “John,” admission of Exhibit 12 violated his Sixth
Amendment right to confront the witnesses against him. 

          A defendant’s right to confrontation under the Sixth Amendment is violated
when a witness is permitted to relate out-of-court “testimonial” hearsay statements
unless the declarant is unavailable and the defendant had a prior opportunity to
cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct.
1354, 1369 (2004); see De La Paz v. State, 273 S.W.3d 671, 680 (Tex. Crim. App.
2008). A statement is testimonial if it was made “under circumstances which would
lead an objective witness reasonably to believe that the statement would be available
for use at a later trial.” Crawford, 541 U.S. at 52, 124 S. Ct. at 1364; see De La Paz,
273 S.W.3d at 680. Whether a statement is testimonial is a question of law. See De
La Paz, 273 S.W.3d at 680. We review de novo the trial court’s ruling admitting
evidence over a confrontation objection. Wall v. State, 184 S.W.3d 730, 742 (Tex.
Crim. App. 2006).

          Here, we need not determine whether Exhibit 12, the inventory report, is
testimonial in nature. Even if we assume, without deciding, that the trial court erred
by admitting Exhibit 12 on this basis, the error was not harmful. 

          When an error is of constitutional dimension, we assess harm under Rule
44.2(a). See Tex. R. App. P. 44.2(a); Scott v. State, 227 S.W.3d 670, 690 (Tex. Crim.
App. 2007) (“A violation of the Confrontation Clause is subject to harmless error
analysis.”). Under Rule 44.2(a), appellant’s conviction must be reversed unless we
determine, beyond a reasonable doubt, that the error did not contribute to the
conviction or to the punishment. See Tex. R. App. P. 44.2(a). We assess whether
there was a reasonable possibility that the error, either alone or in context, moved the
jury from a state of nonpersuasion to one of persuasion. Scott, 227 S.W.3d at 690. 
Among the relevant factors to consider are (1) the importance of the evidence to the
State’s case; (2) whether the evidence was cumulative of other evidence; (3) the
presence or absence of other evidence corroborating or contradicting the evidence on
material points; and (4) the overall strength of the State’s case. Id. We must also
consider any other factor in the record that may shed light on the probable impact of
the trial court’s error on the minds of average jurors. See id. Ultimately, after
considering these various factors, we may not affirm unless we conclude beyond a
reasonable doubt “that the error did not contribute to the conviction.” Id. at 690–91.

          Applying the relevant factors, we conclude appellant was not harmed by any
erroneous admission of Exhibit 12 on this basis. Based on appellant’s confession and 
the State’s evidence that appellant had stolen $680,824.32 in materials, the
importance of John’s portion of Exhibit 12 was minimal, at best. Exhibit 12 was
cumulative in that Exhibit 11 showed that well over the State’s aggregate value
allegation of $200,000 was substantiated. See Lehman, 792 S.W.2d at 85. Even
without the evidence of John’s data concerning a portion of the inventory, the State’s
case against appellant was strong. Accordingly, we conclude beyond a reasonable
doubt the erroneous evidence, if any, did not contribute to appellant’s conviction or
punishment.

          Accordingly, appellant’s second point of error is overruled.

Conclusion

 
       We affirm the judgment of the trial court.

 
 
 
                                                           Laura Carter Higley

                                                           Justice

 

Panel consists of Chief Justice Radack and Justices Alcala and Higley.

Publish. Tex. R. App. P. 47.2(b).