

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00076-CR

ANTHONY CARL CRAVER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
## TRIAL COURT NO. 1272901D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Anthony Carl Craver appeals his conviction for robbery causing bodily injury.[2]  In six points, Craver argues that the trial court erred by overruling his motion to quash the State's indictment; that the evidence is insufficient to

----

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 29.02 (West 2011).

support his conviction; that the trial court erred by not including in the jury charge an instruction for the lesser-included offense of theft; that there was error in the jury charge; and that the trial court erred by allowing the State to admit evidence at the punishment phase that he had committed prior, sequential felonies. We will affirm.

## II. BACKGROUND

Mike Vasquez, a loss-prevention detective for Sears, was monitoring security cameras at Hulen Mall in Fort Worth on February 8, 2012, when, at approximately 6:10 p.m., he noticed Craver in the department store. Vasquez said that at this time he witnessed Craver "concealing merchandise into a bag." Vasquez notified another loss-prevention agent, Kevan Holmes, of Craver's activity. By Vasquez's account, as Craver left the store without paying for the items he had secreted in his bag, Holmes followed [him], stopped him, and tried to "convince him to come back" into the store. Vasquez testified that he too came out to meet Craver shortly after Holmes had done so.

Vasquez said that at this time, Craver handed Holmes an "Xbox controller"; "toss[ed his] bag over" the nearby railing; and then "lung[ed] over the railing." Vasquez averred that when he looked over the railing to see how Craver had "landed," he saw that Craver had "landed on a lady customer in the mall." And according to Vasquez, because of the time and day, people were at the mall walking around and shopping. Vasquez said that he and Holmes then "ran down

the stairs" in an attempt to apprehend Craver. Craver, however, continued running and fled from the mall by using a nearby exit.

During Vasquez's time on the stand, the State introduced photographs of the department store's entry and railing where this incident occurred. Through the aid of these photographs, Vasquez again described Craver's actions to the jury. The State also introduced, and played for the jury, a video from in-store cameras which displays Craver ducking down behind a display in the store, taking items and placing them in his bag, and then Craver leaving the store without paying for the items. Further, the video displays Holmes stopping Craver after he left the store, Craver walking back and forth in front of the store's entrance as Holmes and others seemingly attempted to corral him, and Craver jumping over the railing with his bags.

Holmes testified that he had encountered Craver shortly before Craver put the unpaid-for items in his bag. Holmes said that Craver drew his attention because he was carrying multiple bags and because Craver asked him whether he worked at the store. Holmes said he left the area and called Vasquez so that he would watch Craver from the camera control booth. By Holmes's account, Vasquez informed him that Craver had "put some things in a bag, controllers, [etcetera]." Vasquez then told Holmes that Craver had left the store. In short order, Holmes approached Craver, told him that he worked for the store, and asked Craver to return to the store with the unpaid-for items. Holmes said that Craver told him that he had not stolen anything and refused to return to the store.

3

As the two spoke, Holmes said that he could see an Xbox controller sticking out of Craver's bag. Holmes told Craver that the controller belonged to the store. At that time, other store employees, including Vasquez, joined in.

After the others arrived, Holmes testified that Craver then handed him the Xbox controller and then "he jumped over the railing." Holmes said that Craver did so because "he was trying to get away." Holmes said that as he looked down, he could see that Craver had "landed on an elderly woman" and that the woman appeared to be injured. Holmes said that the woman required medical assistance and that an ambulance was needed to transport her away from the mall. Holmes averred that after landing on the woman, Craver "took off running."

Police Cadet Mike Ford of the Fort Worth Police Department, who was working as a security supervisor for Hulen Mall on February 8, 2012, also testified. Ford said that after receiving a call for security assistance, he went toward Sears, at which point he saw Craver "on top of a female in the lower level with a bunch of [Sears's] loss prevention officers standing up on the upper level pointing down [toward Craver]." Ford testified that he later learned the female's name, Kathleen Culp. Ford said that as he looked over the railing, he saw Craver "frantically trying to get up and get away from that area." Ford said that Culp appeared to be in "extreme pain" and that she was "grabbing her lower back and asking for help." From there, according to Ford, Craver fled from the area and Ford radioed "mobile units" to search for Craver. Ford said that Craver left a bag containing some of the items he had taken from Sears. Craver also testified

4

that the mall was open and that customers and mall employees were in the area where Craver had landed.

Mary Feherty testified that she and Culp were walking at Hulen Mall on February 8, 2012. Feherty said that as the two walked past Sears's lower level, she felt something "falling higher above [her] down behind." As she turned to see "what it was" that had fallen, she saw Craver getting up off of Culp and Culp "crying." Feherty said that she grabbed hold of Craver and that she could see security personnel coming down the stairs toward her area. Feherty said that her attempts to hold Craver were futile and that he ran off. According to Feherty, a licensed vocational nurse, medical personnel took Culp to an ambulance after placing her on a backboard, lifting her from the ground, and strapping her to a stretcher. Medical personnel then transported Culp to a nearby hospital, where she spent several days in the intensive care unit. Feherty testified that as a result of Craver landing on her, Culp suffered a "fracture of her thoracic vertebrae."

Culp testified that on February 8, 2012, she and Feherty were walking at the mall for "physical fitness." She said that shortly after the two began walking, she "got hit from behind." Culp said that upon being struck, she was immediately in pain. Culp averred that she was "[j]ust in shock" and "didn't know what was going on" except to say that she was transported to the hospital where she learned that her "back was broken and fractured." Culp said that her injuries required her to stay in intensive care for about two days and then in a "regular

room" for another "three to four days." Culp said that she wore a hard back brace after leaving the hospital and that doctors ordered her to "bed rest" for nine months. Culp described her injuries as painful.

Because the State had indicted Craver for aggravated robbery, Craver requested at the charge conference that the jury charge include instructions on the lesser-included offenses of robbery, theft, and assault. The court granted Craver's request for an instruction on robbery but denied his requests for the inclusion of instructions regarding theft and assault.

A jury found Craver guilty of robbery causing bodily injury. After the trial court heard evidence at punishment, it found the State's enhancements to be true and sentenced Craver to thirty-eight years' incarceration. This appeal followed.

### III. DISCUSSION

#### A.    Motion to Quash

In his first point, Craver argues that the trial court erred by overruling his motion to quash the State's indictment. Specifically, Craver argues that the indictment failed to allege that he acted recklessly in that it did not allege facts sufficient to show that he had knowledge of, or was aware of, the fact that people might have been in the area where he landed when he jumped over the railing at the mall. The State argues that the indictment adequately informed Craver of the acts upon which it was relying to prove that Craver acted recklessly. We agree with the State.

6

Here, the indictment read that Craver had:

Then and there while in the course of committing theft of property and with intent to obtain or maintain control of said property, recklessly cause serious bodily injury to another, Kathleen Culp, by jumping over the second floor railing to the ground floor of a mall during business hours and landing on Kathleen Culp with his body when there were persons in the area of his landing.

We review a trial judge's decision to deny a motion to quash an indictment de novo. *See Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010). A motion to quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant notice of the acts he allegedly committed. *Miller v. State*, 333 S.W.3d 352, 356 (Tex. App.—Fort Worth 2010, pet. ref'd) (*citing DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988)). Article 21.15 of the Texas Code of Criminal Procedure requires specific language be in the charging instrument when, as in this case, it is alleged that the accused acted recklessly. *See State v. Rodriguez*, 339 S.W.3d 680, 682 (Tex. Crim. App. 2011); *see also* Tex. Code Crim. Proc. Ann. art. 21.15 (West 2009). It is unnecessary, however, for the State to allege evidentiary facts. *Stadt v. State*, 120 S.W.3d 428, 442 (Tex. App.—Houston [14th Dist.] 2003) *aff'd*, 182 S.W.3d 360 (Tex. Crim. App. 2005) ("[I]t was only required [that an indictment] allege conduct a jury could rationally find to be reckless under the circumstances of this case.") *Id.*; *see also Juba v. State*, No. 14-12-00770-CR, 2013 WL 5423080, at *1 (Tex. Crim. App.—Houston [14th Dist.] Sept. 23, 2013, pet. ref'd) (mem. op, not designated for publication.

7

The culpable mental state of "reckless" is satisfied by evidence indicating that the defendant consciously disregarded a known, substantial, and unjustifiable risk that serious bodily injury would occur—a risk that if disregarded constitutes a gross deviation from the standard of care an ordinary person would exercise under the same circumstances. *See Davis v. State*, 955 S.W.2d 340, 348–49 (Tex. App.—Fort Worth 1997, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 974 (1992)); *see also* Tex. Penal Code § 6.03(c) (West 2011). Reckless conduct "involves conscious risk creation, that is, [that] the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk." *Davis*, 955 S.W.2d at 349 (quoting *Aliff v. State*, 627 S.W.2d 166, 171 (Tex. Crim. App. 1982)).

In *Rodriguez*, a reckless discharge of a weapon case, the court of criminal appeals gave several examples of what would be considered sufficient allegations in a charging instrument to constitute proper notice of recklessness to a defendant. 339 S.W.3d at 683–84. The Court stated:

> For example, the State might allege "by shooting into the ground *in a crowd of people*," or "by shooting a gun in the air *in a residential district*," or "by shooting at beer bottles in his backyard *in a residential district*," or "by shooting a gun on the grounds *of an elementary school*," or "by shooting at a Stop sign *in a business district*," or "by shooting into the bushes *at a city park*." These are the sorts of actions that might entail a known and unjustifiable risk of harm or injury to others, risks that the ordinary person in the defendant's shoes probably would not take.

*Id.* (footnotes omitted and emphasis added).

8

Here, the indictment alleged that Craver had jumped over a railing at the mall "during business hours" and "when there were persons in the area of his landing." These allegations are similar to the court of criminal appeals' examples of "in a crowd of people," or "in a business district." Jumping over a rail at the mall during business hours when there are people in the area where one would land entails a known and unjustifiable risk of harm or injury to others, and an ordinary person in Craver's shoes probably would not have taken the same risk. Thus, the State adequately informed Craver of the acts he allegedly committed and the circumstances that constituted recklessness. *See Miller*, 333 S.W.3d at 356; *see also Rodriguez*, 339 S.W.3d at 683–84.

Because the indictment alleged the circumstances—jumping over the second floor railing to the ground floor of a mall during business hours and landing in an area where there were people—that gave rise to the acts constituting aggravated robbery—recklessly causing serious bodily injury to another during the commission of theft—we are constrained to conclude that the State's indictment was sufficient and that the trial court did not err by overruling Craver's motion to quash the indictment. *See Stadt*, 120 S.W.3d at 441–43 (holding that the indictment adequately informed appellant of the acts the State planned to rely upon to constitute "recklessness" in a manslaughter charge when it stated that he operated his vehicle at an unreasonable speed, failed to keep a

9

proper lookout, failed to maintain a single lane of traffic, and changed lanes unsafely). We overrule Craver's first point.

## B. Sufficiency of the Evidence

In his second point, Craver argues that the evidence is insufficient to support the jury's verdict that he committed robbery. Specifically, and much like his first point, Craver argues only that there is insufficient evidence to support the jury's verdict that he acted recklessly. We disagree.

### 1. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## 2. Robbery and Recklessness

A person commits robbery if, in the course of committing theft, the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 29.02(a)(1) (West 2011). An actor's culpable mental state is generally shown by circumstantial evidence. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). Culpability may be inferred from the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995), *cert. denied*, 906 S.W.2d 481 (1996). As discussed above, the culpable mental state of "reckless" is satisfied by evidence indicating that the defendant consciously disregarded a known, substantial, and unjustifiable risk that serious bodily injury would occur—a risk that if disregarded constitutes a gross deviation from the standard of care an ordinary person would exercise under the same circumstances. *Davis*, 955 S.W.2d at 348–49.

Here, viewing the evidence in the light most favorable to the jury's determination that Craver acted recklessly, the evidence shows that Craver's conduct occurred on a Wednesday night when it was known that customers were shopping and employees were working at the mall. Testimony at trial indicated that the people on the lower level were visible from where Craver leaped over the railing. Despite the presence of these people, Craver attempted to avoid Sears's loss-prevention employees by jumping over the railing of the second floor down onto the first floor. And even after landing on Culp, Craver fled the area despite Culp's crying in pain and Feherty's attempts to hold him there.

11

We hold that the jury could have reasonably inferred that Craver consciously disregarded a known risk that he would injure another person when he leaped over the railing to the first floor of the mall during business hours while visible customers and employees were shopping and walking around, and that he grossly deviated from the standard care an ordinary person would have exercised under the same circumstances. *See Davis*, 955 S.W.2d at 348–49. We overrule Craver's second point.

## C.  Theft as a Lesser-Included Offense

In his third point, Craver argues that the trial court erred by denying his requested instruction on the lesser-included offense of theft in the jury charge. The State argues that Craver was not entitled to the lesser-included offense of theft because there was no evidence at trial of the stolen items' value. We agree with the State.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State,* 163 S.W.3d 734, 741 (Tex.

12

Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Both the State and Craver agree that in this case theft is a lesser-included offense of aggravated robbery, and we agree with both parties. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994) (holding that because evidence from which jury could find that defendant and his accomplices had committed lesser-included offense of theft rather than aggravated robbery, defendant was entitled to instruction on theft). The only issue, then, is whether the record contains some evidence to support an instruction for theft.

A person commits a theft "if he unlawfully appropriates property with intent to deprive the owner of property." *See* Tex. Penal Code Ann. § 31.03(a) (West Supp. 2014). The Penal Code describes several grades of theft ranging from a Class C misdemeanor to a felony of the first degree. *See id.* § 31.03(e). With few exceptions not applicable here, the only element distinguishing one grade of theft from another is the value of the property taken. *See id.* Under Texas law, the value of the property taken is an essential element of the offense. *See Simmons v. State*, 109 S.W.3d 469, 478–79 (Tex. Crim. App. 2003); *Sowders v.*

13

*State*, 693 S.W.2d 448, 450 (Tex. Crim. App. 1985); *Christiansen v. State*, 575 S.W.2d 42, 44 (Tex. Crim. App. [Panel Op.] 1979); *McKnight v. State*, 387 S.W.2d 662, 663 (Tex. Crim. App. 1965).

Here, neither party introduced any evidence of the value of the items Craver took from Sears; thus, without evidence of the value of the property taken, Craver was not entitled to an instruction on theft.   *See Ramirez v. State*, 422 S.W.3d 898, 903 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding that defendant convicted of robbery was not entitled to instruction on lesser-included offense of theft, where there was no testimony as to the value of the truck that the defendant took, as required to determine the grade of the theft).

Craver attempts to distinguish *Ramirez* from his case by arguing that *Ramirez* stands for the proposition that it was the trial court's lack of knowledge of the value of the vehicle stolen in that case that foreclosed Ramirez from being entitled to the lesser-included offense instruction, and here, Craver argues, the State's indictment states that a single Xbox controller is valued at less than $1500.[3]  *Ramirez* does not stand for this proposition; rather, *Ramirez* stands for the well-established rule that the value of property taken is an essential element

---

[3]The State's indictment originally included two counts against Craver. Count one, the count the State pursued at trial, was for aggravated robbery. Count two, a count the State waived prior to trial, alleged that Craver had committed theft of "a video game controller of the value of less than $1500." Although there is no record evidence of the value of the items Craver took from Sears, there is evidence that he attempted to abscond with more than one video game controller.

14

of the offense and that without evidence at trial of the value of the property taken, a defendant is not entitled to an instruction on theft. *See id.* Because there was no evidence introduced at trial from any source revealing the value of the property Craver took, the jury could not have found an essential element of theft. *Id.* Thus, the trial court did not err by denying Craver's request for the lesser-included instruction of theft because there was no evidence whereby a rational jury could have acquitted him of the greater offense of robbery while convicting him of the lesser-included offense of theft. *Moore*, 969 S.W.2d at 8. We overrule Craver's third point.

### D. The Jury Charge

In his fourth point, Craver argues that the "jury charge was erroneous in that it failed to require the [S]tate to prove every element beyond a reasonable doubt." Craver's argument is predicated on the same notion posited in his first and second points, namely, that the State's charge did not contain a required culpable mental state.

As discussed in points one and two, the State's allegation that Craver jumped over the railing "during business hours" and "when there were persons in the area of his landing" is sufficient language to describe the culpable mental state or recklessness. *See Davis*, 955 S.W.2d at 348–49 ("The culpable mental state of 'reckless' is satisfied by evidence indicating that the defendant 'consciously disregarded a known[,] substantial[,] and unjustifiable risk that . . . serious bodily injury would occur.") (citing *Johnson v. State*, 915 S.W.2d 653,

658) (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). The trial court paraphrased this language in the jury charge. And recklessness is a statutorily defined culpable mental state. *See* Tex. Penal Code § 6.03(c). We overrule Craver's fourth point.

### E. State's Exhibits 43 and 44

In his fifth and sixth points, Craver argues that the trial court erred by allowing the State, at punishment, to introduce "two felony judgments which purported to demonstrate that Craver had two prior, sequential felony convictions." These judgments were introduced as State's Exhibits 43 and 44. Craver's argument is that the judgments should not have been admitted because they were not linked to him through fingerprints but, according to him, only through name, date of birth, and street address. But as the State points out, there is far more evidence that Craver was the person convicted in these judgments.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *See id.* at 921–22; *Banks v. State*, 158 S.W.3d 649, 651–52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986)). While evidence of a certified copy of a final judgment and sentence may be a preferred and

16

convenient means, the State may prove both of these elements in a number of different ways, including "documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted." *Flowers*, 220 S.W.3d at 922.

Here, State's Exhibits 43 and 44 are linked to Craver by more than just his name, date of birth, and address. State's Exhibit 38, which was admitted without objection, contains a certified copy of a final judgment and supporting documents and was verified by fingerprint. State's Exhibit 38 contains Craver's full name; his date of birth; an address associated to Craver, both in the judgment's supporting documents and verified at trial through phone records linking Craver to the address; a specific State identification number; and a specific Dallas county identification number. State's Exhibit 38 also shares the same full name, date of birth, and physical address with State's Exhibits 43 and 44.

Furthermore, State's Exhibit 42 contains the same identifying State identification number, Craver's full name, and his address as was in State's Exhibit 38. State's Exhibit 42 further contains a judicial confession detailing two convictions. The first conviction found in State's Exhibit 42 details Craver's full name, the court in which the conviction was had, a cause number, the county of the offense, and the date of conviction. These identifiers found in the first conviction of State's Exhibit 42 are the same name, court, cause number, county, and date of conviction found in State's Exhibit 43. State's Exhibit 42 and 44 also share the description of the conviction found in State's Exhibit 43. The second

17

conviction found in State's Exhibit 42 details Craver's full name, the court in which the conviction was had, a cause number, the county of the offense, and the date of conviction. These identifiers found in the second conviction of State's Exhibit 42 are the same name, court, cause number, and county of the offense found in State's Exhibit 44.

We hold that the State met its burden of linking State's Exhibit 43 and 44 with sufficient information to establish both the existence of the prior convictions and Craver's identity as the person convicted. *See id.*; *see also Doby v. State*, 454 S.W.2d 411, 413–14 (Tex. Crim. App. 1970). We overrule Craver's fifth and sixth points.

## IV. CONCLUSION

Having overruled all six of Craver's points on appeal, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

LIVINGSTON, C.J., and GABRIEL, J., concur without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 25, 2015

18